And we'll hear counsel in Gary Soles v. Town of Oxford William S. Palmieri As a police officer, and as the complaint, which is the basis of this appeal makes plain, he was thereafter subjected to a significantly intertwined series of negative events from Mr. Temple, who was the first selectman, Mr. Simosky, who was the representative of the Connecticut State Police overseeing the department in which Mr. Temple served. Those were set forth in a complaint that was filed with the district court in our district, and after a motion to dismiss, the matter was dismissed in its entirety. And I have briefed a number of issues upon which the district court has erred in dismissing this matter, and I'd like to address the substantive aspect of some of those. One of the main claims in the plaintiff's complaint was that he was disabled as a result of his military service, that he suffered from post-traumatic stress disorder. That is set forth in, I believe, paragraph 17 of the complaint. It was made known to his employers and to those supervisors in his employment as a police officer. He suffered from PTSD as a result of his military service, and as a result of suffering from that disability of PTSD, we alleged in our complaint that he was, in fact, suspended without pay. He had, subsequent to the facts that are articulated in the complaint, he was terminated. But the Americans with Disabilities Act was sounded in our complaint both as an actual disability, and there is no dispute among the case law of our circuit that PTSD is an actual disability. And there is no dispute that Mr. Soles both suffered from PTSD and made his employers and supervisors known of that fact. There's also a claim in this matter of a perception under the ADA that he was disabled. Now, in reviewing this claim, the district court said, well, the only mention that you make in the complaint of PTSD is that you just say that your client had, that Mr. Soles suffered from PTSD. That's absolutely incorrect. A plain reading of the complaint says, as I've briefed in Section 3 of our complaint, of the appellant's brief, commencing on page 19, regarded as disabled. In the amended complaint, Mr. Soles stated in paragraph 56, in honor of about April 30, 2013, the defendant Temple suspended the plaintiff from his employment. And then, in bold, I state, in a written letter of suspension dated that day, defendant Temple admits that he is suspending the plaintiff due to his disability of post-traumatic stress disorder. Now, the district court, Judge Bryant, goes to great lengths to ignore or, through oversight, not acknowledge that statement in the complaint. She says, in her ruling at 17, that the complaint states that the plaintiff suffers from post-traumatic stress disorder and it's the only instance in which PTSD is mentioned in paragraph 17. Then, the court, in articulating reasons why the ADA claim was dismissed by the court, goes on, as I extensively cite in my brief on page 21, says that there's no evidence that Temple knew that Mr. Soles suffered PTSD. There's no evidence that he was informed that Mr. Soles suffered from PTSD. There's no evidence that Mr., or indication, I should say, because we're still at the pleading stage. This is a complaint. There's nothing in the complaint that indicates any of this knowledge to Mr. Temple. Yet, there is this statement in black and white in the complaint that says Mr. Temple acted and said that he, in a written letter of suspension, admitted that he's suspending the plaintiff due to his disability of post-traumatic stress disorder. So, the judge was completely wrong. They just missed this completely. That, in and of itself, should reverse the decision as to the ADA. There are other issues that arise in the judge's application of the ADA standard. She uses the older pre-ADAA standard and then says, in regards to the actual disability claim, that Mr. Soles didn't demonstrate that his PTSD was chronic or didn't add, she adds in requirements that don't exist under the ADA as amended. And, to short-circuit that argument, there's, in fact, the cases that I cite that come from our circuit. They are Goonan v. Federal Reserve Bank of New York, 916 FEDSUP, 2nd 470, a 2013 case, and Pacenza v. IBM, 363 Federal Appendix 128, a 2010 case, that both stand for the proposition that PTSD is a qualifying disability pursuant to ADA. This was just wrong on a number of bases. As far as the USERRA, that's a motivating factor test. Now, there are statements in the complaint that said that Mr. Somosky, the Connecticut State Police officer charged with oversight of the Oxford police officers, he said, there are people who are bothered by the fact that you were a military service. Now, the judge improperly stepped out of her role, said, okay, there's no evidence that there was any animus based on military service. Now, there's also a direct statement in there that Mr. Temple also said that he made negative statements and negatively felt about Mr. Officer Soles' military service. So, the judge said, well, there's, you know, as far as what Somosky said, you know, you can interpret that to mean that there were other people who were dissatisfied with Mr. Soles' work or him not following rules. Well, that's not a proper inference for the court to draw. The more reasonable inference is that Somosky was stating that he himself was the person who had a problem with Mr. Soles' military service. And it could be an inference either way, but the point is the judge chose an inference that supported dismissal of the claim when a more reasonable or an equally reasonable inference of the pleadings was to support the complaint. Back on the ADA claim, are you saying that it violates it because there was a perceived disability? Your Honor, I have pled both perceived and actual disability. But if it's the actual, you have the issue of interfering with the life activity. Absolutely. And post-traumatic stress disorder, obviously, and in there, there's, in the complaint, we stated that it, I believe it stated that it, I don't want to misstate, I believe it said that it affected his working. But, you know, there is a question that the court did bring up, so I don't want to say that it definitely was in there. But as far as the perception of disability, that was absolutely supported by the pleadings as they were at this point. And that is that Mr. Soles undisputedly told his supervisors that he had PTSD and, in fact, they, in writing, stated they were acting in a way to take adverse employment action against him on that basis. And if you're right about that, what's the relief? The relief is to restore this complaint back to, to overturn the court's decision to dismiss the complaint and restore it back to the… You were propped. Well, it didn't get much further than the pleading stage, Your Honor. It was just, this was just a complaint. And there was a complaint filed… If we were to say the dismissal of the complaint was error, what's the relief you want? I want the complaint to be reinstated and then we'd have an opportunity to proceed to litigate the matter to trial. Thank you very much. Thank you. I have reserved two minutes, I believe. I would be glad to answer any further questions. May it please the court. My name is Dennis DeRao. I represent the town of Oxford and its first selectman, Mr. George Temple. I'm going to start with counsel's argument regarding the ADA. One thing that counsel fails to mention here is, first, with respect to the actual disability, it only relates to an alleged knee injury. Nothing in the complaint has pointed to the town or Mr. Temple doing anything with respect to that injury. Now, with respect to the PTSD, counsel says, well, we allege that Mr. Temple was aware. Well, he did so in conclusory fashion. There's nothing there that says he was made apprised of this upon returning during a meeting or anything like that. It's a simple conclusory assertion. And at the 12B6 stage, the court doesn't have to assume that to be true. Now, getting past the knowledge or the awareness issue, counsel is correct that it was alleged that there was a suspension. But that's it. A suspension with pay. And in this circuit, a suspension with pay is not always an adverse employment action. I believe the case law is pretty clear that a suspension with pay may qualify if there are other attendant materially adverse effects to the terms and conditions of employment. And that's not alleged here. And that was the problem with this complaint. This is the second complaint. There was an initial complaint. There was a motion for a more definite statement by both sets of defendants, the state and the town. And this is the second complaint that came out. Still incoherent. Still without many dates. And here, counsel had the opportunity to allege that there were these other attendant materially adverse consequences to the terms and conditions of his employment. But as pled, there is no factual matter in the complaint from which it can be reasonably inferred that the plaintiff, Gary Sewell's, his employment, the terms and conditions of that employment, were impacted in a materially adverse way. Now, with respect to... Do you rely on to say that a suspension with pay isn't adverse action unless there are other, you know, what you call them, other consequences? Sure, materially adverse consequences. Well, there is a Second Circuit case that is Joseph v. Leavitt, and that's 465 F.3rd 87. It's a Second Circuit 2006. Now, in that case, what was ultimately held is pay, a suspension with pay, pending an investigation without more, doesn't constitute an adverse employment action. Here, under these circumstances, there is nothing that says any terms and conditions were impacted. Sure it said that. It didn't say the opposite, that a suspension is an adverse employment action unless an investigation is ongoing? Well, it said... Sure, I think if you rephrase that, it was the same thing. Pending an investigation, a suspension with pay, with an investigation pending. So if the town does more to him... So is that what you're saying here? I'm saying that, at this point, what was alleged is a suspension with pay. That doesn't impact the terms and conditions of employment in a materially adverse way. There is case law to support that, and in Joseph v. Leavitt, that's what they say. Now, in that case, there was an investigation pending. And here, in the complaint, there is an allegation that there were fitness for duty evaluations that were requested that the plaintiff participate in. That's tantamount to an investigation as to whether this claim of PTSD could have impacted his ability to perform as an officer. That's a reasonable inference from those allegations. Based on that, there's either an investigation in a suspension without pay, which falls right into the ambit of Joseph, and, therefore, it wouldn't be an adverse employment action. Now, with respect to the USARA claim, as counsel pointed out, it's only been alleged that Sgt. Somoskey, the Connecticut State Police Sergeant, made certain comments about others having issues with plaintiff's alleged military status. Now, what counsel doesn't get to is there's no allegation that he had a loss of a job benefit, which is required under that act. There's also, with respect to the retaliation claim under that act, there's been no allegation that he engaged in any protected activity as specifically delineated in that act. And without those allegations, his claim must fail, even at the 12B6 stage. I think I also just want to apprise the court that counsel failed to brief many issues. In an addendum to one of the forms that was filed with this court, there were 15 issues laid out. Here, he didn't brief any of his age claims under either the ADEA or the Connecticut Fair Employment Practices Act. Nothing under Title VII. You've had an opportunity to comment on that in your brief, right? That's correct. Thank you. Thank you very much, Your Honors. Ms. Valentine? Good morning. May it please the court, I am Assistant Attorney General Colleen Valentine, representing Sergeant Daniel Samosky in his individual capacity in this matter. Sergeant Samosky's interests are closely aligned with those of the Town of Oxford. However, all of the claims that have been addressed today do not actually apply to Sergeant Samosky. With respect to the ADEA and the Uniformed Service Employment and Reemployment Act, none of those claims have been brought against Sergeant Samosky in his individual capacity. With respect to the only two claims that conceivably could be going forward today as to Sergeant Samosky, those are the substantive due process and the intentional infliction of emotional distress claims. And it is Sergeant Samosky's position that there was no error with respect to the District Court's decision on both of those claims, that as a matter of law, that reading the complaint, particularly in light of the fact that the plaintiff had not one but two opportunities to properly plead his claims, that there was not enough to meet the minimal pleading threshold. And so the defendant, Sergeant Samosky, respectfully requests that this Court affirm the District Court's dismissal as to the entire case, but particularly as to the claims brought against him. If there are no further questions from the Court, I rest in my grief. Mr. Palmieri. I just want to address, the first point I want to address is paragraph 61 of the complaint, which states in no uncertain terms that in addition to being suspended with pay, the allegation is that the plaintiff was, after it states, subjecting him to leave without pay after the suspension with pay. So in addition to further actions that I plead in there. The adverse employment action that's stated clearly in paragraph 61 is suspension without pay. That goes to every one of the claims that are extant through the appeal of this matter. That's the ADA, the FIPA disability, the USERRA, the substantive due process and IIED claims. As the District Court did point out, everything in this case emanates from a single nucleus of fact that's stated in a couple different places here. So this was the adverse employment action in addition to the suspension with pay. So with all due respect to counsel, counsel is missing. Your Honor, we also claim that the plaintiff is subject to or is suspended without pay. To determine that the suspension without pay is one of the more misquite activities. Your Honor, we've stated that in the complaint both that the plaintiff suffers from post-traumatic stress disorder and that he had a substantial knee injury with a disability, a permanent partial disability rating. The words impaired a specific major bodily function were not used in the complaint. But the fair inference from the PTSD especially is that these are disabilities which impair major life functions. PTSD certainly thinking, emotional well-being and other main and including working. So without using those magic words, there is a strong inference that can be drawn and should have been drawn so that this complaint would survive. Now what we're asking is to have the complaint restored. Counsel has made a claim in both of their briefs, both opposing counsel, that I've had several and the court has suggested that I've had numerous opportunities to amend the complaint. How many opportunities have you had? I've had none. The complaint was filed, both co-defendants asked for a motion for clarification that was restricted to which claims sounded against which defendants. And I, of course, entitled the complaint an amended complaint because that's the proper title once one modifies the complaint. But to substantively address any of the issues that the court raises or the defendants raise, I've never had an opportunity to do that. Thank you very much. Thank you very much. Reserved decision. Thank you, Your Honor. Yes, of course, of course. Judge Winter has a question. Excuse me, Your Honor. The letter was not attached to the complaint, no, Your Honor. But it's not in the record because we never got any further than the complaint and the motions to dismiss. Temple and the town of Oxford were Mr. Soule's employers, were Officer Soule's employers. Daniel Somosky was the representative of the Department of whatever they call it now, the Connecticut State Police, overseeing the operations of the Oxford Police Department. All right. Thank you very much. Thank you very much. We'll reserve the decision.